UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ALYCE C. DALE, )
)
    Plaintiff, )
)
        v. ) Case No. 3:18-cv-276-PPS-MGG
)
ANDREW M. SAUL, )
Commissioner of )
Social Security, )
)
    Defendant. )

# OPINION AND ORDER

Alyce Dale has appealed from an administrative law judge's denial of her application for Social Security disability benefits. In doing so, she claims that the ALJ committed two errors which require a reversal of his decision. First, Dale says that the ALJ improperly "played doctor" when he reviewed and considered new medical evidence that came into existence after Dale filed her application, without any professional (*i.e.* medical) assistance. Second, she says that the ALJ was required to but did not consider medical expert opinion as to whether Dale's combined impairments medically equaled two specific Social Security disability listings. I agree that the ALJ's decision to review and opine on Dale's new medical evidence and recent conditions without the benefit of any review by an additional medical professional was error. Consequently, the ALJ's decision will be reversed and this matter remanded so that such further medical opinion evidence may be obtained and considered by an ALJ.

**Background**

Alyce Dale applied for disability benefits on April 11, 2014, claiming that as of November 1, 2012, she was disabled. [A.R.[1] 10.] Her initial claims were denied and on February 10, 2017, she appeared before an ALJ through a video hearing. [*Id.*] On March 29, 2017, the ALJ issued his written decision which once again denied Dale benefits, and after exhausting her administrative appeals, Dale has sought review before me. [A.R. 7.]

In the written decision, the ALJ determined that Dale had the following severe impairments: degenerative disc disease of her lumbar spine, headaches, diabetes mellitus, and osteoarthritis of the hips. [A.R. 12.] In addition, Dale suffered from pituitary adenoma, *i.e.* a tumor on her pituitary gland. [*Id.*] That condition and its associated impairments were not discovered for more than a year after Dale first applied for benefits. [A.R. 16.] In June 2015, Dale had complaints of dizziness, ear pain, and headaches and blurry vision. [*Id.*] In late July/early August 2015, she underwent an MRI and a tumor on her pituitary gland was discovered. The tumor was removed that October and she subsequently underwent radiation therapy. And while subsequent MRIs showed that the tumor had not returned, Dale continued to report persistent headaches (as of September 2016) as well as seizures, which were partially treated with medication. [A.R. 17.]

In evaluating these impairments, the ALJ determined that Dale did not meet any

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 12. Citations are to the page number in the lower left-hand corner of the A.R.

of the applicable social security listings for disability. Specifically, the ALJ examined listing 1.02 (dysfunctions of a joint), 1.04 (disorders of the spine), 11.02 (convulsive epilepsy), and 11.03 (non-convulsive epilepsy). In doing so, the ALJ relied on the opinions of state agency medical and psychological consultants. [A.R. 14.] Notably, those opinions were drafted in December 2014, a full seven months prior to Dale's pituitary adenoma diagnosis and the appearance of symptoms from it. The ALJ did not order a re-review of Dale's medical records prior to determining whether she met the epilepsy-related listings, even though Dale's seizures did not begin to occur until around the time her pituitary adenoma was discovered. [A.R. 15.] Nonetheless, the ALJ determined Dale did not meet or equal any of those listings and proceeded to the next step of the review process.

At the next step, the ALJ determined Dale's residual functional capacity (RFC). He determined that Dale should be limited to light work, subject to several additional limitations. Those were: lifting up to 20 pounds occasionally, up to 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing or walking for six hours, pushing and pulling as much as she could lift or carry—subject to the 20- and 10-pound restrictions previously mentioned. [A.R. 15.] He also found that she could climb stairs and ramps just fine, but never could climb ladders, ropes or scaffolds. He also found she could stoop, kneel, crouch and crawl, but never work on unprotected heights, around moving mechanical parts, or operate a commercial vehicle. [*Id*.]. The ALJ based this RFC upon his review of Dale's testimony

and submitted evidence, which he labeled as a careful consideration of the entire record. [*Id.*] I won't belabor the point or repeat the ALJ's description of the evidence contained within his written decision. [*See* A.R. 15-19.]

Then, as is often the case in these types of cases, this RFC and some additional hypothetical questions were posed to a vocational expert (VE) who testified whether or not such a hypothetical person with Dale's RFC could likely find gainful employment. The ALJ determined that Dale could perform her past relevant work as a Fast Food Worker and Industrial Cleaner, as those jobs are defined in the Dictionary of Occupational Titles. [A.R. 19-20.] He further found she could perform the jobs of Housekeeping Cleaner, Bakery Worker Conveyor Line and Poultry Eviscerator, all of which existed in sufficient numbers in the national economy. As a result, the ALJ found that Dale was not disabled within the meaning of the Social Security Act and its regulations.

**Discussion**

In a Social Security disability appeal, my role as district court judge is limited. I don't start from scratch and determine whether a claimant is disabled and entitled to benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g). The Supreme Court has said that "substantial

evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest standard, the review is a light one, but of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

Dale's main argument is that given that she began to experience symptoms and was diagnosed with a tumor on her pituitary gland during the review process, and, importantly, after her file was reviewed by the state agency physicians, the ALJ's opinion is inherently deficient. The point is not just that her medical condition and impairments changed after filing, but that they did so dramatically and that no state agency physician conducted a re-review of her records after her pituitary adenoma was diagnosed. This she says, led to an improper consideration of her medical files by the

ALJ in the first instance in which the ALJ substituted his own lay opinions for what should have been the opinions of professionals.

The Commissioner's main retort to this is that additional medical opinion was not necessary. Specifically, he says:

> [T]he ALJ acknowledged the point that the State agency medical consultant issued their opinions before Plaintiff's pituitary tumor surfaced. In so doing, the ALJ explained he included in the RFC additional postural and environmental limitations to accommodate the evidence related to the tumor and its effects, as well as hearing testimony.

[DE 18 at 7.] And therein lies the problem. The ALJ reviewed the objective medical evidence and testimony relating to Dale's pituitary tumor and its resulting impacts on her abilities. The ALJ then formed his own opinions based on that review and determined Dale was not disabled. That's different than reviewing underlying medical records to see whether they support the conclusions or opinion testimony from a medical professional being offered by a claimant. One is evaluating an opinion, the other is forming an opinion in the first instance. The former is the ALJ's task in cases like these, while the latter is impermissibly playing doctor. "[A]n ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).

As the ALJ acknowledged, "[t]he most notable feature of the claimant's longitudinal medical history concerns recent difficulties related to pituitary adenoma." [A.R. 16.] With that it mind, and the fact that Dale's pituitary adenoma was discovered after the state agency review of her file, the ALJ's decision to decide the matter without

obtaining updated medical opinion expert is especially glaring. This alone is grounds for reversal. The Seventh Circuit has held that remand is required where a state agency psychiatrist reviewed only part of the psychiatric records in the case. *See Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010). This is because, as noted above, the Seventh Circuit has "said repeatedly that an ALJ may not play doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2018) (internal quotations and citations omitted).

Simply put, "the ALJ should have obtained an updated medical opinion to evaluate the additional evidence." *Muhammad v. Astrue,* 585 F.Supp.2d 1023, 1033 (N.D. Ill. 2008); *see also Cirelli v. Astrue*, 751 F. Supp. 2d 991, 1004–05 (N.D. Ill. 2010) ("When presented with this new evidence, the ALJ should have obtained an updated medical opinion[.]"); *Buckner v. Astrue,* 680 F.Supp.2d 932, 940 (N.D.Ill. 2010) ("The ALJ could have brought in a Medical Expert to testify at the hearing, or sent the Claimant out for a consultative exam; however, he took no steps to do so."). This medical opinion was necessary both to determine if Dale met any applicable listing, and if not, to determine her RFC.

In addition, Dale raises an argument that the RFC determination was incomplete because it did not account for her impairments from her pituitary tumor, specifically seizures and headaches. Even though the failure to obtain additional expert opinion is grounds itself for reversal, I think this point is worth addressing given the Commissioner seems to suggest that on some level the error was harmless.

The Commissioner says Dale has not sufficiently shown that the nature of her headaches and impairments were severe enough to warrant an additional limitation to her RFC. But I think that argument misses the point. As Dale notes, the ALJ's written opinion acknowledges these impairments, but then there isn't any correlating limitation associated with them within the RFC. The ALJ included specific RFC limitations on account of Dale's musculoskeletal deficits and a resulting "possibility of symptoms such as weakness, numbness, dizziness, fatigue, and deconditioning" but nothing specifically relating to Dale's continued headaches or "somewhat under control" seizures. [A.R. at 17.] "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Perhaps those were the limitations found for both the musculoskeletal deficits *and* the pituitary tumor, but that isn't clear from the written decision. This incongruity and potential gap must be further explained by the ALJ.

On remand, the Commissioner should ensure Dale's full medical file is reviewed by a state agency physician or similar expert medical professional. Then, with that medical opinion evidence in hand, the ALJ can evaluate it to determine whether it is consistent with the objective medical evidence and whether Dale is disabled on account of her impairments and limitations.

**Conclusion**

For the foregoing reasons, the decision of the ALJ denying Alyce Dale's

application for Social Security disability benefits is REVERSED and REMANDED for further proceedings consistent with this opinion.

SO ORDERED on August 29, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT